***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 ***********
The parties stipulated the following:
 ISSUES *Page 2 
1. Did plaintiff sustain a compensable injury by accident on or about May 30, 2007 to his back while employed with the defendant-employer?
2. What, if any indemnity compensation is the plaintiff entitled?
3. What if any medical compensation is the plaintiff entitled?
 ***********
The parties entered into the following:
 STIPULATIONS
1. The parties are properly before the Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The Industrial Commission has jurisdiction of the parties and the subject matter.
3. The employer-employee relationship has existed at all relevant times between the Employer and Employee.
4. The defendant-employer was self-insured at all relevant times.
5. Plaintiff's average weekly wage was sufficient to yield the maximum compensation rate for 2007.
6. The Pre-Trial Agreement was marked as Stipulated Exhibit 1 and received into evidence.
7. Industrial Commission Forms were marked as Stipulated Exhibit 2 and received into evidence.
8. Medical Records were marked as Stipulated Exhibit #3 and received into evidence.
9. OSHA Records were marked as Stipulated Exhibit #4 and received into evidence. *Page 3 
10. Defendants' Responses to Plaintiff's First Set of Interrogatories were marked as Stipulated Exhibit #5 and received into evidence.
11. Plaintiff's Responses to Defendants' First Set of Interrogatories were marked as Stipulated Exhibit #6 and received into evidence.
12. Photos of the Cisco plant site were marked as Stipulated Exhibit #7A-V and received into evidence.
 ***********
The Full Commission modifies and affirms the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 36 year old who was employed as a computer engineer by the defendant-employer. Plaintiff's job duties included the installation and repair of large computers. Prior to May 30, 2008, he had not received medical treatment for his lower back.
2. Sometime between the first week of March and the last week of April 2007, plaintiff attempted to cut a branch from a tree in his yard. He used metal spikes to climb the tree and had a safety line attached to the tree and him. At some point, the safety line loosened. In order to avoid falling to the ground, plaintiff reached out with both of his arms and grabbed the trunk of the tree. His arms slid about 12 to 18 inches against the tree. As a result of this incident, plaintiff sustained injuries to his nose and his arms. He developed scabs on the scraped areas of his skin that began at both of his wrists and extended down near both of his elbows. Plaintiff did not seek medical attention for his injuries, and there is no evidence that plaintiff injured his back at this time. *Page 4 
3. Sometime after May 2, 2007, John Gabriel, an employee for defendant-employer, observed plaintiff's injuries caused by the tree incident. John Gabriel admitted that when he observed plaintiff's injuries, they were as plaintiff described them on his direct examination at the hearing. Plaintiff's description was as follows: "scab was all the way from the whole [of] my forearm on both my left and right arm and my face." Mr. Gabriel was able to see the injuries because plaintiff had worn a short sleeve shirt at work.
4. Sometime between May 2, 2007 and June 1 2007, Mark Slotnick and Doug DeBerry observed scarring on plaintiff's nose and arms. Plaintiff told his co-workers what had happened with the tree incident.
5. On or about May 30, 2007, plaintiff was installing a server in building 5 at a Cisco worksite. Plaintiff was working on back side of a server when he stepped back from the server and his right leg went through a hole in the floor. He came forward almost hitting the rack and then slammed backwards hitting his head on the floor. Following this incident, plaintiff experienced soreness in his lower back, pain in his right leg, and headaches.
6. On May 30, 2007, plaintiff reported the above-described work related incident to Mark Slotnick, plaintiff's team leader. As evidenced by the Form 19 submitted by defendants to the Industrial Commission, plaintiff's immediate supervisor, John Schrmil, knew plaintiff had reported a work related injury. On May 31, 2007, plaintiff left a message for John Schrmil concerning the work related injury that occurred on 30 May 2007. On June 1, 2007, plaintiff specifically discussed via a phone conversation with John Schrmil that he had sustained a work related injury." *Page 5 
7. During the course of their working relationship, Mark Slotnick would make smart comments to plaintiff; regarding the extent of plaintiff seeking management intervention. Plaintiff and Mr. Slotnick were encouraged to get along better in the workplace.
8. Plaintiff first sought medical treatment for his right leg following the May 30, 2007 work related incident at Carolina Express Care on June 5, 2007. Plaintiff specifically sought treatment for a deep, painful bruise that had developed in his right thigh. This medical record corroborates plaintiff's report that he had stepped in a hole at work the previous week: "35 y/o w 0-7 fell thru a hole r leg x 1 wk."
9. The June 5, 2007 Carolina Express Care medical records reveal that ecchymosis, edema, and erythema were visible in plaintiff's right calf and leg. Plaintiff was directed to undergo an ultrasound at that time but initially declined."
10. During the June 5, 2007 medical examination at Carolina Express Care, the plaintiff's skin was specifically examined by the provider. The medical examination record has an inquiry as to whether plaintiff had a rash on his skin and there is a blank space to fill additional information concerning the skin. "N" for "no" is circled with regard to the existence of a rash and the space under skin for additional information was left blank. This record does not corroborate John Gabriel's observation that plaintiff had noticeable scabs on his arms. This record does not corroborate Mark Slotnick and Doug DeBerry's claim that plaintiff had noticeable scratches or scars on his arms. Furthermore, with regard to plaintiff's nose, there is a written notation that plaintiff's sinuses were tender, but no notation of a noticeable scar or scratch on his nose. If the time frame of May 30, 2007 is correct as to when plaintiff was first observed with scratches or scars on his arms, then such conditions would have been present to be observed on June 5, 2008, but such conditions were non-existent at that time. The lack of any *Page 6 
corroboration of John Gabriel, Mark Slotnick, and Doug Deberry's observations of plaintiff's skin condition on his arms supports plaintiff's assertion that there was a separate and distinct tree incident much further back in time than asserted by defense witnesses. If the tree incident had occurred the week following Memorial Day, plaintiff's arms would not have healed to the extent that there would have been nothing visible on his arms during the June 5, 2007 medical examination.
11. Following the June 5, 2007 medical examination at Carolina Express Care, plaintiff underwent an ultrasound of his right leg on June 12, 2007. The results were normal with regard to plaintiff's blood flow in his right leg. He returned to Carolina Express Care on June 16, 2007 reporting lower back pain, right hip pain, and right thigh pain. Plaintiff was prescribed Prednisone and Percocet for the symptom complaints.
12. A conflict arose between Mark Slotnick and plaintiff concerning the setting of plaintiff's work hours. The conflict was such that John Schrmil, the immediate supervisor for both men, had to travel from Charlotte to Raleigh on June 26, 2007 to resolve the conflict between these two co-workers. John Schrmil established that because Mark Slotnick worked 40 hours at the Cisco plant and plaintiff worked only 20 hours at that site, Mark Slotnick would be responsible for the setting of plaintiff's hours. It was further established that Mark Slotnick had limited authority over the plaintiff and was not plaintiff's supervisor.
13. On or about June 26, 2007, Mark Slotnick prompted a conversation between plaintiff and John Schrmil concerning plaintiff's report of a work related injury. By his own admission, John Schrimil acknowledged that such a discussion took place but he was unable to describe any details as to how plaintiff described his work related back injury. By his own admission, John Schrmil acknowledged that Mark Slotnick made no mention that he believed *Page 7 
plaintiff had injured his back falling out of a tree and not by stepping into a hole. Despite providing this notice to Mark Slotnick and John Schrmil, no action was taken by the defendant-employer to investigate plaintiff's report of a work related injury until after August 9, 2007.
14. On July 19, 2007, plaintiff's lower back pain and right leg pain persisted. Plaintiff sought medical treatment at Leesville Internal Medicine where Dr. Barakat recommended that plaintiff undergo an MRI of his lumber spine. Plaintiff informed Dr. Barakat that he fell at work. A July 24, 2007 MRI of plaintiff's lumbar spine revealed a herniated disc at the L5-S1 level.
15. On August 3, 2007, plaintiff returned to Leesville Internal Medicine to review his MRI results with Dr. Barakat. Dr. Barakat recommended that plaintiff undergo a neurosurgical consult, but plaintiff expressed that he did not want to undergo surgery and wanted to wait a week. Plaintiff began experiencing complications in his left leg at about this time.
16. On August 6, 2007, plaintiff had Dr. Joshua Mitchell, a chiropractor at Chiropractor Partners, review his MRI. In the patient healthcare form completed by the plaintiff, he reported that symptoms began May 30, 2007. He recorded, "I fell at work." Plaintiff expressed strong reservations about undergoing surgery in response to Dr. Mitchell's explanation as to the severity of the condition.
17. On or about August 9, 2007, plaintiff's manager, John Schrmil, reported plaintiff's injury to Sedgwick James, the third party administrator handling workers' compensation claims for defendant-employer. Mr. Schrmil provided the information for the Form 19, and it was sent to the Industrial Commission on August 10, 2007. *Page 8 
18. At some point following August 9, 2007, Deborah Nichols, adjuster for defendant-carrier, attempted to obtain plaintiff's medical records as part of her investigation. Plaintiff declined signing a release until he had an opportunity to consult with an attorney.
19. On the same day plaintiff saw Dr. Mitchell, he went to Raleigh Neurosurgical Clinic where he was examined by Dr. Margraf as a result of a referral by Dr. Barakat.
20. Dr. Margraf reviewed plaintiff's July 24, 2007 MRI and recommended plaintiff undergo surgery for his disc herniation. Plaintiff shared with Dr. Margraf the history of his injury beginning May 30, 2007 when he stepped in a hole at work and the progression of his pain from his lower back and his right leg to his lower back and his left leg. Because the left leg pain was a new complaint since the July 24, 2007 MRI, Dr. Margraf recommended plaintiff undergo a second MRI.
21. On August 13, 2007, plaintiff sought another opinion with regard to his left leg complaint with Dr. Peterson at the Division of Neurology at Duke University Medical Center. Dr. Peterson recommended a range of options to plaintiff including undergoing EMG studies. Plaintiff described in detail to Dr. Peterson how he injured his back on May 30, 2007 stepping into a hole at work with his right leg.
22. On August 14, 2007, plaintiff sought yet another opinion as to whether he should undergo surgery for the herniated disc revealed on the July 24 2007 MRI. Dr. Chen, Rex Pain Consultants, reviewed plaintiff's July 24, 2007 MRI and recommended that plaintiff undergo surgery. Plaintiff explained to Dr. Chen how he had injured himself beginning with the May 2007 incident where he stepped into a hole at work with his right leg.
23. On August 17, 2007, plaintiff underwent a second MRI of his lower back that revealed evidence of a migrating fragment in plaintiff's lower back. *Page 9 
24. On August 21, 2007, plaintiff returned to Dr. Margraf to review his second MRI. Plaintiff agreed to undergo surgery as recommended by Dr. Margraf. The surgery was scheduled for August 28, 2007.
25. On August 22, 2007, the Industrial Commission received a Form 61 dated 20 August 2007 denying plaintiff's claim because he would not return medical authorization forms.
26. On August 28, 2007, plaintiff underwenta L5-S1 hemilaminectomy and diskectomy and a proximal S1 foraminotomy on the left side.
27. From May 30, 2007 to August 28, 2007, plaintiff did not miss any days from work due to the injuries he sustained on May 30, 2007 when he stepped in a hole at work.
28. As a result of the May 30, 2007 work related incident involving plaintiff stepping into a hole, plaintiff sustained the lower back injuries surgically treated by Dr. Margraf.
29. As a result of the May 30, 2007 work related incident involving plaintiff stepping into a hole, plaintiff has been unable to earn any wages from August 28, 2007 to August 4, 2008, the date plaintiff returned to work for defendant-employer.
30. The August 28, 2007 surgery performed by Dr. Margraf was reasonably necessary to lessen plaintiff's disability, effect a cure and/or relieve plaintiff's pain caused by the May 20, 2007 incident involving plaintiff stepping into a hole.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the undersigned makes the following:
 CONCLUSIONS OF LAW
1. On May 30, 2007, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer whereby he sustained a lower *Page 10 
back injury as a specific result of the work assigned. N.C. Gen. Stat. § 97-2(6). N.C. Gen. Stat. § 97-2(6).
2. As a result of the May 20, 2007 injury by accident, plaintiff is entitled to receive temporary total disability compensation in the amount of $754.00 for the time period beginning August 30, 2007 to August 4, 2008. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to medical compensation from the date of the compensable injury by accident and continuing as necessary to effect a cure, provide relief or to lessen the period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Defendant shall pay temporary total disability benefits to plaintiff at the compensation rate of $754.00 beginning August 30, 2007 to August 4, 2008, subject to the attorney approved Paragraph 3 hereinafter. This amount shall be paid in one lump sum, subject to the attorney fee approved hereinafter.
2. Defendant shall pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to effect a cure, provide relief, or lessen the period of disability, including the back surgery performed by Dr. Margraf. Medical bills are payable when said bills have been submitted according to established Industrial Commission procedures.
3. Plaintiff shall pay an attorney fee of twenty-five percent (25%) of the compensation awarded to the Plaintiff in Paragraph 1 of this AWARD and shall be paid as *Page 11 
follows: Defendants shall deduct twenty-five percent (25%) of the lump sum compensation due plaintiff and pay the same directly to plaintiff's counsel.
4. Defendant shall pay the costs.
5. Plaintiff's claim for permanent partial disability compensation, if any, is HEREBY RESERVED. Plaintiff's counsel shall petition for an award of a reasonable attorney fee at such time as plaintiff may be entitled to any permanent partial disability compensation.
This the ___ day of November 2009.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ PAMELA T. YOUNG CHAIR *Page 1